# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 976 | **DATE** | 5/29/2002 |
| **CASE TITLE** | Miranda O'Neal vs. Altheimer & Gray, et al | | |



**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's Motion for Summary Judgment is granted and the O'Neal's suit is dismissed in its entirety. Altheimer & Gray had moved to strike Thumper's deposition testimony which was submitted by plaintiff. This motion is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | **MAY 3 0 2002** | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

FILED
MAY 29 2002
Judge Harry D. Leinenweber
U.S. District Court

DOCKETED
MAY 3 0 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MIRANDA O'NEAL,

    Plaintiff,

v.

ALTHEIMER & GRAY, TERRY SCHLADE
and LOUIS GOLDMAN,

    Defendants.

Case No. 99 C 0976

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Miranda O'Neal ("O'Neal"), an African-American, has worked for the law firm of Altheimer & Gray ("A&G") since 1985 and continues to work there today. She started working as a messenger in the mail room and was promoted to the file room in 1986 where she remained until 1996. From 1996 until 1997 she worked for the law firm's Office Services department as an administrative assistant. Her duties at the Office Services Department included coordinating building and office maintenance services and ordering stationery. In September 1997, she was transferred to the firm's law library. Her duties as an assistant in the law library include ordering and maintaining records for all books, subscriptions and services, preparing and processing library invoices, assisting with the database vendor billing, and inputting library staff time into the firm's computer system.



O'Neal is paid a salary which in most years is supplemented with a bonus. Her salary has increased every year, both before and after her transfer to the library. Her bonuses have doubled in size since the transfer. This transfer to the library forms the basis of most of O'Neal's Title VII complaints. She contends that she was transferred because of her race and in retaliation for complaining of racial harassment by her supervisors. She also contends that she was harassed because of her race.

The law firm contends that it had a business reason to transfer O'Neal because it had decided to eliminate her position in the Office Services Department and what it considered to be a comparable position was available in the library. It also contends that, at the time of her transfer, O'Neal expressed satisfaction and enthusiasm for her new job. O'Neal now contends that her job is boring and less visible than the Office Services position. She also contends that her pay is less than it would be if she had been allowed to remain in Office Services.

In support of her suit O'Neal relies in part on the deposition testimony of Paula Thumper ("Thumper"), who was O'Neal's supervisor for a portion of the time she worked in Office Services. Thumper testified that she headed Office Services for just under two years. She had been in the position for about three months when in June 1996, she asked O'Neal to work for her. Thumper supervised O'Neal until June 1997, when she left Altheimer & Gray to work for another

law firm, about three months prior to O'Neal's transfer. The decision to eliminate O'Neal's position in Office Services was made by Thumper's successor, Rita Gerch ("Gerch"). Thumper testified that one of the reasons for resigning from A&G was her belief that members of Altheimer & Gray's management team had pressured her to demote or fire O'Neal and other African-Americans, Hortense Ross, and Bonnie Lovette, so as to get them out of Office Services for image reasons, which she had refused to do.

Six months before O'Neal was transferred, A&G had run an ad in the *Chicago Tribune* seeking applicants for Office Services because at that time the firm considered adding personnel. However, after Gerch arrived, the firm decided, rather than increase Offices Services, to eliminate one administrative assistant position. The position eliminated was O'Neal's and Lovette continued to work as an administrative assistant for two years until she voluntarily resigned in 1999. Lovette was replaced by Gloria Mullins, also an African-American.

O'Neal's charge of racial harassment is directed against Louis Goldman ("Goldman"), chairman of A&G's international law practice, Terry Schlade ("Schlade"), firm partner and COO, and Gerch. She contends that Schlade's actions in trying to get her transferred constituted an act of racial harassment. She also claimed that Goldman yelled at her and shook his finger at her on one occasion, which she felt showed disrespect for her. She also claims that

another employee told her that Goldman had called her a nigger. The law firm has moved for summary judgment.

## DISCUSSION

### *The Transfer*

The parties agree that Seventh Circuit case law holds that a lateral transfer without a loss of benefits does not constitute an adverse employment action upon which a Title VII claim may be based. *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698 (7th Cir. 2001). O'Neal argues that her transfer was not lateral because she suffered a financial loss and experienced significant diminished responsibilities. However, the evidence does not support her claim of financial loss. The business records of A&G show that she has received the same or higher salary increases ($1,300 to $1,500) in every year since the transfer as she received in the single year that she was in Office Services ($1,300). Further she has received a bonus in every year since the transfer substantially higher ($1,200 to $1,500 as opposed to the $750 she received in Office Services) than what she received prior to her transfer. While she argues that percentage-wise a $1,300 increase in 2001 is smaller than a $1,300 raise received in earlier years, this is because her current base salary is higher. Whatever impact this argument might have is lost because O'Neal has offered no evidence that her raises since the transfer were smaller than those she would have received had she remained in Office Services. She

- 4 -

presents only her own subjective belief that this is so. Moreover, the evidence shows that in 2000, Brenda Jahny, a Caucasian, replaced Gloria Mullins, an African-American, as an administrative assistant in Office Services. Jahny received a salary of $29,500 and a bonus of $500. By comparison, O'Neal received a salary of $33,100 and a bonus of $1,500 in 2000. A subjective belief without more is insufficient to prove a salary discrepancy. *Simpson v. Rykoff-Sexton, Inc.*, 2000 WL 1307510 (N.D. Ill.2000).

However, as O'Neal points out, an adverse employment action has been defined quite broadly in the Seventh Circuit and "can encompass other forms of adversity as well" as salary decreases. *Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir. 1987). Such adversity includes "dramatic downward shift[s] in skill level required to perform job responsibilities." *Dahm v. Flynn*, 60 F.3d 253 (7th Cir. 1994). However minor employment changes, even those that might alter the public's perception of the job responsibilities (*Spring v. Sheboygan Area School District*, 865 F.2d 883 (7th Cir. 1989)) or bruise the employee's ego (*Flaherty v. Gas Research Institute*, 31 F.3d 451 (7th Cir. 1994)), are not sufficient to constitute adverse employment actions.

O'Neal's duties in Office Services prior to the transfer consisted of overseeing building maintenance services, installation of locks and ordering stationery. Her Library duties include ordering and maintaining the books, subscriptions and services,

preparing and processing library invoices for payment, database and vendor billing and inputting library staff time in the firm's computer system. While her current duties are different there is no evidence that they constitute a "dramatic downshift in responsibility" that would amount to an adverse employment action. Moreover, the evidence shows that O'Neal was initially quite happy with her new library position. Shortly after assuming the library position she sent an unsolicited memo to her supervisor expressing her gratitude for the transfer and telling him that she enjoyed the new challenge posed by her new duties. Subjective satisfaction with and agreement to a transfer is powerful evidence that the change is not an adverse employment action. *Tyler v. Ispat Inland, Inc.*, 245 F.3d 969 (7th Cir. 2001).

The final blow against O'Neal's discriminatory transfer claim is that there is no evidence that her former position, which A&G claims was eliminated, was filled by a Caucasian or by anyone. While there is some evidence that at one time Schlade considered increasing Office Services staffing, nevertheless her position was in fact eliminated. This left one Administrative Assistant position in Office Services which was and continued to be occupied by African-Americans for the next four years. O'Neal does not suggest that the facts are otherwise so O'Neal's Title VII claim based on the transfer fails to meet the prima facie case requirements on two points.

### *Harassment*

The basis for the harassment claim against A&G is the alleged actions of Goldman, Schlade and Gerch. Goldman allegedly shook his finger in O'Neal's face and yelled at her. She gives no particular reason to believe that such conduct was racially motivated other than her statement that another employee had told her that Goldman had referred to her as a "nigger." However, this evidence is clearly hearsay. Evidence to be considered in a motion for summary judgment must be based on personal knowledge. FED. R. CIV. PROC. 56(e). At best the evidence shows that Goldman was not a particularly nice person who verbally abused A&G employees from time to time without regard to race. The evidence also showed that Goldman was clearly dissatisfied, perhaps unfairly, with O'Neal's work with respect to a failure to discover inaccurate Chinese translations on certain of the firm's stationery items ordered by Office Services for its Chinese office.

With regard to Schlade, O'Neal's harassment claim is based upon his and Goldman's alleged efforts to get her reassigned or demoted. While there is some evidence that they may have attempted to have O'Neal reassigned or demoted, the evidence is also clear that if they did indeed seek this, they were unsuccessful. Thumper refused to do so and David Ritter, the head of the firm's labor department, specifically warned Schlade and Goldman not to punish O'Neal. She was not demoted and no transfer took place until Gerch

took over as O'Neal's superior. Tellingly, O'Neal does not contend that Gerch ever said or did anything of a racial harassing nature. On the contrary the evidence shows that Lovette remained as an administrative assistant under Gerch's supervision and was quite satisfied with her treatment. The rest of O'Neal's allegations concern what Goldman and/or Schlade allegedly told someone else, but not to O'Neal personally. In short while the atmosphere at A&G was probably not the most congenial for O'Neal, nevertheless, the workplace must be both subjectively and objectively hostile to violate Title VII. *Harris v. Forklift Systems*, 114 S.Ct. 367, 370 (1993). Here, while O'Neal might have taken offense to her treatment, nevertheless in no way was the treatment and atmosphere objectively hostile and no reasonable jury could so find.

### *Retaliation*

As in O'Neal's demotion claim, a prima facie case of retaliation under Title VII requires that she suffer an adverse employment action subsequent to her participation in a protected activity. For the reasons stated earlier in this opinion she has failed to do.

### **CONCLUSION**

Based on the foregoing, the Defendant's Motion for Summary Judgment is granted and the O'Neal's suit is dismissed in its entirety. Altheimer & Gray had moved to strike Thumper's

deposition testimony which was submitted by plaintiff.  This motion is denied.

**IT IS SO ORDERED.**

                                          Harry D. Leinenweber, Judge
                                          United States District Court

Date: May 29, 2002